FILED
CHARLOTTE, NC

MAY 2 3 2013

US DISTRICT COURT
WESTERN DISTRICT OF NC

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| UNITED STATES OF AMERICA | ) | DOCKET NO. 3:13cr160-MOC |
| | ) | |
| | ) | BILL OF INDICTMENT |
| | ) | Violations: |
| | ) | 18 U.S.C. § 2 |
| v. | ) | 18 U.S.C. § 1001 |
| | ) | 18 U.S.C. §1028A |
| | ) | 18 U.S.C. § 1035 |
| | ) | 18 U.S.C. § 1347 |
| | ) | 18 U.S.C. § 1349 |
| CALVIN CANTRELL ESTRICH | ) | 18 U.S.C. § 1957 |

THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

**Introduction**

1.      From in or about October 2009 through in or about November 2010, CALVIN
CANTRELL ESTRICH, co-conspirator Joye (a.ka. Joy Strong) and others defrauded the North
Carolina Division of Medical Assistance (hereinafter "Medicaid") of at least $450,000 in
payments for fraudulent and medically unnecessary services.  In order to perpetrate the fraud,
ESTRICH and Strong stole the identities of medical and mental health professionals and forged
their signatures on documents in order to fraudulently obtain approval from Medicaid for the
claimed services.

**Relevant Individuals and Entities**

2.      In or about February 2009, ESTRICH incorporated Everyday's Blessing, LLC, a
North Carolina limited liability company.  Everyday's Blessing claimed to provide mental and
behavioral health services in Charlotte, North Carolina, and elsewhere.

1

3.     In or about August 2009, Everyday's Blessing received approval from Medicaid to operate as a Community Intervention Services Agency to provide Intensive In-Home Community Intervention Services, which are designed to stabilize living arrangements and prevent out-of-home therapeutic treatment for children and youth.

4.     Prior to incorporating and operating Everyday's Blessing, ESTRICH worked with Strong at her company, Advocating for America (AFA), which also claimed to provide mental and behavioral health services and was approved by Medicaid to provide Intensive In-Home Community Intervention Services.

5.     ESTRICH and Strong shared the day-to-day operations of Everyday's Blessing. ESTRICH and Strong held no professional licensures or certifications for the provision or authorization of mental health services.

6.     K.A. was a North Carolina licensed Family Nurse Practitioner and was employed part-time by Everyday's Blessing to review and sign patient files from in or about November 2009 through in or about February 2010. Although K.A. signed some documents indicating that she assessed the medical necessity for services to Medicaid recipients, in reality K.A. did not meet with or provide any services to Everyday's Blessing clients.

7.     P.W. was a Licensed Clinical Social Worker from in or about May 2007 to the present. ESTRICH recruited P.W. to assist in the initial set up of Everyday's Blessing. Thereafter, P.W. was paid to be supposedly an "on-call" therapist for Everyday's Blessing. However, P.W. never met with any clients, nor performed any work for Everyday's Blessing.

8.     J.O. was a Licensed Professional Counselor from in or about June 2007 to the present. J.O. was not employed by and did not perform any services for Everyday's Blessing.

2

## The Medicaid Program

9. The North Carolina Medicaid Program is a state-administered program aided by federal funds. Medicaid is designed to provide medical assistance for certain low income individuals and families. Covered services include mental and behavioral health services.

10. Medicaid is a "health care benefit program," as defined in Title 18, United States Code, Section 24(b) and a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b(f).

11. The Division of Medical Assistance administers the Medicaid Program and oversees mental and behavioral health providers throughout the state who receive payments from Medicaid.

12. Medicaid assigns recipients identification numbers. Each Medicaid patient (identified herein as "recipient") is assigned a unique identification number by the Medicaid program. Each recipient can be identified by reference to his or her unique identification number.

13. Medicaid policies for Intensive In-Home Community Intervention Services require that a "diagnostic assessment" be completed in order to determine whether mental health services are appropriate for an individual. A diagnostic assessment must be conducted by a team of at least two (2) qualified professionals both of whom are licensed or certified clinicians. One member must be a practitioner whose professional licensure or certification authorizes the practitioner to diagnose mental illnesses, and the other must be a medical doctor, nurse practitioner, physician assistant, or licensed psychologist. If these professionals determine that a mental health service is warranted, including Intensive In-Home Community Intervention Services, the diagnostic assessment provides the basis for the development of an individualized

3

Person Centered Plan (PCP), which is a written plan to establish treatment goals and strategies. A PCP is required before any service can be billed to Medicaid.

14.     Medicaid policies for mental health services also require a "service order" to demonstrate the medical necessity of services. The determination of medical necessity is based on an assessment of each individual's needs, and must be completed before an agency may begin providing mental health services. Service orders are required for each individual mental health service and may only be written by a physician, licensed psychologist, nurse practitioner, or physician's assistant. Service orders must be documented in each client's individualized Person Centered Plan.

### Schemes to Defraud Medicaid

15.     From in or about October 2009 through in or about November 2010, ESTRICH, Strong, and others perpetrated a scheme to defraud Medicaid by falsifying documents in order to get Medicaid recipients approved for Intensive In-Home Community Intervention Services and then fraudulently seeking reimbursement for unnecessary intervention services through their company, Everyday's Blessing. These fraudulent claims and documents falsely listed P.W., J.O., and K.A. as the rendering licensed professionals when, in fact, P.W., J.O., and K.A. had not performed the clinical services. Furthermore, many of the claimed services were not provided at all.

16.     ESTRICH and Strong obtained P.W.'s and K.A.'s relevant licensure information through their purported employment at Everyday's Blessing. Although P.W. supposedly was paid to be an on-call therapist, P.W. did not provide any services or assessments on behalf of Everyday's Blessing.

17.     K.A. agreed to sign some Medicaid recipient files, but K.A. did not actually see those recipients or perform any services for those recipients. Instead, ESTRICH and Strong paid

4

K.A. to sign paperwork knowing that K.A. did not actually see or assess those recipients in order to fraudulently obtain approval from Medicaid to seek reimbursement for services.

18.     ESTRICH and STRONG also fraudulently forged K.A.'s signature on other documents, again for the purpose of fraudulently obtaining approval from Medicaid to seek reimbursement for services.

19.     Strong obtained J.O.'s licensure information when J.O. considered applying to another company of Strong's for employment.  J.O., however, never worked at Everyday's Blessing and never saw any Medicaid recipients on Everyday's Blessing's behalf.

20.     Pursuant to the scheme to defraud, ESTRICH and Strong misappropriated P.W.'s, K.A.'s and J.O.'s names and licensure information in order to falsify documents such as Person Centered Plans (PCPs) and service orders when, in fact, P.W., K.A. and J.O. did not perform the claimed services.  Thereafter, ESTRICH and Strong used these falsified documents in order to gain approval from Medicaid to provide Intensive In-Home Community Intervention services to Medicaid recipients and fraudulently obtain reimbursement for those unnecessary services.

21.     For example, from in or about October 1, 2009, to in or about October 28, 2010, ESTRICH and Strong:

     a.  submitted false and fraudulent diagnostic assessments and Person Centered Plans to Medicaid and Medicaid agencies bearing the forged signatures of P.W. and J.O.;

     b.  submitted Person Centered Plans to Medicaid and Medicaid agencies bearing the signature of K.A. as the qualified licensed professional authorized to determine medical necessity.  Some K.A. signatures were authentic and some were forged; however, K.A. did not, in fact, meet with the Medicaid recipients or provide the claimed diagnostic services.

5

22.     These fraudulent documents were the basis for ESTRICH's and Strong's false and fraudulent claims to Medicaid for Intensive In-Home Community Intervention Services supposedly provided to Medicaid recipients.

23.     As a result of the falsified diagnostic assessments and Person Centered Plans, at least thirty-five (35) Medicaid recipients were thereafter wrongly authorized by Medicaid to receive Intensive In-Home Community Intervention Services through Everyday's Blessing.

24.     Services provided to children associated with Everyday's Blessing, if provided at all, were little more than childcare services and were not the type of services approved by Medicaid. In many instances, the services were never provided at all.

25.     ESTRICH and Strong submitted false and fraudulent claims for reimbursement exceeding $700,000 to Medicaid for Intensive In-Home Community Intervention Services allegedly provided by Everyday's Blessing from in or about October 2009 to in or about November 2010, resulting in $462,178.00 in payments from Medicaid.

26.     Prior to operating Everday's Blessing, ESTRICH and Strong committed a similar scheme to defraud through AFA in which they forged clinicians' signatures in order to obtain approval for services and seek reimbursement from Medicaid for fraudulent services.

### Theft of Identities to Submit False Claims

27.     Pursuant to the scheme to defraud, ESTRICH and Strong, aided and abetted by each another, knowingly used, without lawful authority, recipient Medicaid Identification Numbers and the names and signatures of licensed professionals in order to fraudulently bill claims to Medicaid through Everyday's Blessing for services that were not provided and not medically necessary.

28.     For example, juvenile Medicaid recipient J.R. did not receive mental or behavioral health services from Everyday's Blessing. ESTRICH and Strong, nevertheless,

6

submitted and caused to be submitted false and fraudulent claims for Intensive In-Home Community Intervention Services purportedly provided to J.R. on 96 separate dates of service from in or about January 2010 to in or about October 2010, resulting in over $24,000 in fraudulent payments from Medicaid. Specifically,

      a.  ESTRICH signed a progress note claiming that Intensive In-Home Community Intervention Services were provided to recipient J.R. on January 28, 2010. On or about February 4, 2010, Everyday's Blessing submitted a claim for payment to Medicaid using J.R.'s Medicaid Identification Number for this alleged January 28, 2010, service when, in fact, no service had been provided; and

      b.  ESTRICH signed a progress note and team meeting note claiming Intensive In-Home Community Intervention Services were provided to J.R. on February 6, 2010. On or about February 11, 2010, Everyday's Blessing submitted a claim for payment to Medicaid using J.R.'s Medicaid Identification Number for these alleged February 6, 2010, services when, in fact, no services had been provided.

    29.  Juvenile Medicaid recipient Z.P. did not receive mental or behavioral health services from Everyday's Blessing. ESTRICH and Strong, nevertheless, submitted and caused to be submitted false and fraudulent claims for Intensive In-Home Community Intervention Services purportedly provided to Z.P. on 43 separate dates of service from in or about March 2010 to in or about May 2010, resulting in over $11,000 in fraudulent payments from Medicaid. Specifically,

      a.  ESTRICH signed a progress note claiming Intensive In-Home Community Intervention Services were provided to Z.P. on March 24, 2010. On or about March 25, 2010, Everyday's Blessing submitted a claim for payment to Medicaid

using Z.P.'s Medicaid Identification Number for this March 24, 2010 service

when, in fact, no service had been provided; and

b.  ESTRICH signed a progress note claiming Intensive In-Home Community

Intervention Services were provided to Z.P. on March 29, 2010.  On or about

April 1, 2010, Everyday's Blessing submitted a claim for payment to Medicaid

using Z.P.'s Medicaid Identification Number for this March 29, 2010 service

when, in fact, no service had been provided.

30.  Juvenile Medicaid recipient D.M. did not receive mental or behavioral health

services from Everyday's Blessing.  ESTRICH and Strong, nevertheless, submitted and caused

to be submitted false and fraudulent claims for Intensive In-Home Community Intervention

Services purportedly provided to D.M. on 57 separate dates of service from in or about March

2010 to in or about August 2010, resulting in over $14,000 in fraudulent payments from

Medicaid.

31.  In order to receive authorization to submit claims for services allegedly provided

to D.M., ESTRICH and Strong falsely represented J.O. as the rendering clinician and forged

J.O.'s signature in the Person Centered Plan.  For example:

a.  A PCP for D.M. was purportedly signed by J.O. on March 3, 2010, as the licensed

professional responsible for the plan.  On or about March 25, 2010, Everyday's

Blessing submitted a claim for payment to Medicaid for the March 3, 2010

service when, in fact, no service had been provided by J.O. to D.M.; and

32.  Another PCP for D.M. was purportedly signed by J.O. on March 31, 2010, as the

licensed professional responsible for the plan.  On or about April 1, 2010, Everyday's Blessing

submitted a claim for payment to Medicaid for this March 31, 2010 service when, in fact, no

service had been provided by J.O. to D.M.

8

33.     Additionally, ESTRICH and Strong submitted and caused to be submitted fraudulent claims for Intensive In-Home Community Intervention Services purportedly provided to S.A.  In order to receive authorization to submit claims for services allegedly provided to S.A., ESTRICH and Strong pretended that J.O. was the rendering clinician and forged J.O.'s signature in the Person Centered Plan.  For example:

    a.  A PCP for S.A. was purportedly signed by J.O. on July 28, 2010, as the licensed professional responsible for the plan.  On or about August 5, 2010, Everyday's Blessing submitted a claim for payment to Medicaid for the July 28, 2010 service when, in fact, no service had been provided by J.O. to S.A.; and

    b.  Another PCP for S.A. was purportedly signed by J.O. on September 30, 2010, as the licensed professional responsible for the plan.  On or about October 19, 2010, Everyday's Blessing submitted a claim for payment to Medicaid for the September 30, 2010 service when, in fact, no service had been provided by J.O. to S.A.

### Payments and Financial Transactions

34.     ESTRICH arranged to receive and accept payment from Medicaid through electronic funds transfer into a BB&T account bearing account number XXXXXX5562, held in the name of Everyday's Blessing, LLC, and jointly controlled by ESTRICH and Strong.  From on or about October 30, 2009, to on or about December 2, 2010, ESTRICH and Strong received payments from Medicaid into account number XXXXXX5562 in the amount of $462,178.00, constituting the proceeds of the scheme to defraud Medicaid described above.

35.     From on or about November 1, 2009 to on or about December 29, 2010, ESTRICH withdrew these criminal proceeds from BB&T account number XXXXXX5562 in the form of cash withdrawals and debit card purchases.

9

36.     On or about November 19, 2010, ESTRICH used the criminal proceeds from his scheme to defraud Medicaid, maintained at his BB&T account number XXXXXX5562, to make a cash withdrawal in the amount of $15,093.00.

### False Statements

37.     In order to evade detection of the fraud scheme, ESTRICH knowing and willfully made materially false, fictitious, and fraudulent statements and representations during the course of a federal health care fraud investigation.

38.     On or about December 21, 2012, Financial Investigators with the North Carolina Medicaid Investigations Division interviewed ESTRICH as part of the federal investigation into Everyday's Blessing.

39.     ESTRICH falsely stated and represented to Investigators that co-conspirator Joye Strong did not work for and was not involved with health care services provided by Everyday's Blessing, knowing that co-conspirator Strong did work for and was involved in the day-to-day operations of Everyday's Blessing.

40.     ESTRICH falsely stated and represented to Investigators that P.W. and J.O. were the licensed professionals employed by Everyday's Blessing, knowing that P.W. and J.O. did not perform any work for Everyday's Blessing.

10

## COUNT ONE

### 18 U.S.C. §§1347 and 1349
### (Health Care Fraud Conspiracy)

41. The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

42. From in or about January 2009 through in or about November 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

knowingly conspired, confederated and agreed with Joye Strong and others known and unknown to the Grand Jury to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, any of the money and property owned by and under the custody and control of any health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

All in violation of Title 18, United States Code, Section 1349.

11

## COUNTS TWO THROUGH FIVE
### 18 U.S.C. §1347 and 2
### (Health Care Fraud)

43.     The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

44.     On or about the dates listed below, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly and willfully devise a scheme and artifice to defraud and to obtain by means of materially false and fraudulent pretenses, representations and promises, money owned by and under the custody and control of healthcare benefit programs, as defined in Title 18, United States Code, Section 24, in connection with the delivery of, and payment for, healthcare benefits, items and services by submitting and causing to be submitted false and fraudulent claims to Medicaid seeking reimbursement for Intensive In-Home Community Support Services which were not provided to the Medicaid recipients in the amounts listed below:

| Count | Recipient | Date of Service | Approximate Date Claim Submitted | Amount Paid |
|-------|-----------|-----------------|----------------------------------|-------------|
| 2 | J.R. | 1/28/2010 | 2/4/2010 | 258.20 |
| 3 | J.R. | 2/6/2010 | 2/11/2010 | 258.20 |
| 4 | Z.P. | 3/24/2010 | 3/25/2010 | 258.20 |
| 5 | Z.P. | 3/29/2010 | 4/1/2010 | 258.20 |

All in violation of Title 18, United States Code, Sections 1347 and 2.

12

## COUNTS SIX THROUGH NINE
## 18 U.S.C. §1035 and (2)
### (False Statements Relating to Health Care Matters)

45.    The Grand Jury re-alleges and incorporates by reference herein all of the

allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges

that:

46.    On or about the dates listed below, in Mecklenburg County, within the Western

District of North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did in matters involving a

health care benefit program, knowingly and willfully

(a) make materially false, fictitious and fraudulent statements and representations; and

(b) make and use materially false writings and documents knowing the same to contain

materially false, fictitious or fraudulent statements and entries

in connection with the delivery of and payment for health care benefits, items and services, in

that the defendant submitted and caused to be submitted the following claims to Medicaid based

upon the materially false, fictitious and fraudulent statement and representation that J.O. was the

rendering clinician in Person Centered Plans for the recipients and dates listed below:

| Count | Recipient | Date of Service | Approximate Date Claim Submitted | Amount Paid |
|-------|-----------|-----------------|----------------------------------|-------------|
| 6 | S.A. | 7/28/2010 | 8/5/2010 | 258.20 |
| 7 | S.A. | 9/30/2010 | 10/14/2010 | 258.20 |
| 8 | D.M. | 3/3/2010 | 3/25/2010 | 258.20 |
| 9 | D.M. | 3/31/2010 | 4/1/2010 | 258.20 |

All in violation of Title 18, United States Code, Sections 1035 and 2.

13

## COUNT TEN
### 18 U.S.C. §1028A(a)(1) and 2
### (Aggravated Identity Theft)

47.     The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

48.     Or about February 4, 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without lawful authority, a means of identification of another person, to wit, the name and Medicaid Identification Number of recipient J.R. during and in relation to the commission of one or more federal felony violations, to wit, a scheme to defraud a health care benefit program, in violation of 18 United States Code, Section 1347, as charged in Count 2.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

14

## COUNT ELEVEN
## 18 U.S.C. §1028A(a)(1) and 2
## (Aggravated Identity Theft)

49.     The Grand Jury re-alleges and incorporates by reference herein all of the

allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges

that:

50.     Or about February 11, 2010, in Mecklenburg County, within the Western District

of North Carolina, and elsewhere, the defendant,

### CALVIN ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without

lawful authority, a means of identification of another person, to wit, the name and Medicaid

Identification Number of recipient J.R. during and in relation to the commission of one or more

federal felony violations, to wit, a scheme to defraud a health care benefit program, in violation

of 18 United States Code, Section 1347, as charged in Count 3.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

15

## COUNT TWELVE
## 18 U.S.C. §1028A(a)(1) and 2
## (Aggravated Identity Theft)

51.     The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

52.     On or about April 1, 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

## CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without lawful authority, a means of identification of another person, to wit, the name and Medicaid Identification Number of recipient Z.P. during and in relation to the commission of one or more federal felony violations, to wit, a scheme to defraud a health care benefit program, in violation of 18 United States Code, Section 1347, as charged in Count 4.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

16

## COUNT THIRTEEN
## 18 U.S.C. §1028A(a)(1) and 2
### (Aggravated Identity Theft)

53.     The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

54.     On or about April 1, 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without lawful authority, a means of identification of another person, to wit, the name and Medicaid Identification Number of recipient Z.P. during and in relation to the commission of one or more federal felony violations, to wit, a scheme to defraud a health care benefit program, in violation of 18 United States Code, Section 1347, as charged in Count 5.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

17

## COUNT FOURTEEN
### 18 U.S.C. §1028A(a)(1) and 2
### (Aggravated Identity Theft)

55.     The Grand Jury re-alleges and incorporates by reference herein all of the

allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges

that:

56.     On or about July 28, 2010, in Mecklenburg County, within the Western District of

North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without

lawful authority, a means of identification of another person, to wit, the name of J.O. as a

Licensed Professional Counselor, during and in relation to the commission of one or more

federal felony violations, to wit, making false statements and representations in connection with

the delivery of and payment for health care benefits, items and services, in violation of Tile 18,

United States Code, Section 1035, as charged in Count 6.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

## COUNT FIFTEEN
### 18 U.S.C. §1028A(a)(1) and 2
### (Aggravated Identity Theft)

57.    The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

58.    On or about September 30, 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without lawful authority, a means of identification of another person, to wit, the name of J.O. as a Licensed Professional Counselor, during and in relation to the commission of one or more federal felony violations, to wit, making false statements and representations in connection with the delivery of and payment for health care benefits, items and services, in violation of Tile 18, United States Code, Section 1035, as charged in Count 7.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

59.     The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

60.     On or about March 3, 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

CALVIN CANTRELL ESTRICH

aided and abetted by others known and unknown to the Grand Jury, did knowingly use, without lawful authority, a means of identification of another person, to wit, the name of J.O. as a Licensed Professional Counselor, during and in relation to the commission of one or more federal felony violations, to wit, making false statements and representations in connection with the delivery of and payment for health care benefits, items and services, in violation of Tile 18, United States Code, Section 1035, as charged in Count 8.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

## COUNT SEVENTEEN
### 18 U.S.C. §1028A(a)(1) and 2
### (Aggravated Identity Theft)

61.     The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

62.     On or about March 31, 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

did knowingly use, without lawful authority, a means of identification of another person, to wit, the name of J.O. as a Licensed Professional Counselor, during and in relation to the commission of one or more federal felony violations, to wit, making false statements and representations in connection with the delivery of and payment for health care benefits, items and services, in violation of Tile 18, United States Code, Section 1035, as charged in Count 9.

All in violation of Title 18, United States Code, Sections 1028A (a)(1) and 2.

## COUNT EIGHTEEN
### 18 U.S.C. §1957
### (Money Laundering)

63.     The Grand Jury re-alleges and incorporates by reference herein all of the allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges that:

64.     On or about November 19, 2010, in Mecklenburg County, within the Western District of North Carolina, and elsewhere, the defendant,

### CALVIN CANTRELL ESTRICH

did knowingly engage and attempt to engage in the following monetary transaction by, through or to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal and transfer of U.S. currency, funds and monetary instruments, such property having been derived from a specified unlawful activity, that is, a scheme to defraud a health care benefit program:

| DATE | ACCOUNT | TRANSACTION DESCRIPTION | AMOUNT |
|------|---------|------------------------|--------|
| 11/19/2010 | BB&T XXXXXX5562 | Debit Memo cash withdrawal | $15,093.00 |

All in violation of Title 18, United States Code, Section 1957.

22

65.     The Grand Jury re-alleges and incorporates by reference herein all of the

allegations contained in paragraphs 1 through 40 of the Bill of Indictment, and further alleges

that:

66.     Or about December 21, 2012, in Mecklenburg County, within the Western

District of North Carolina, and elsewhere, the defendant,

CALVIN CANTRELL ESTRICH

did, willfully and knowingly make materially false, fictitious, and fraudulent statements and

representations in a matter within the jurisdiction of the judicial and executive branches of the

United States, to wit a federal health care fraud investigation.

All in violation of Title 18, United States Code, Sections 1001(a)(2).

23

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by Section 981(a)(1)(C). The following property is subject to forfeiture in accordance with Section 982 and/or 2461(c):

- a. All property which constitutes or is derived from proceeds of the violations set forth in this bill of indictment;

- b. All property involved in such violations or traceable to property involved in such violations; and

- c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) or (b) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a) and (b).

The Grand Jury finds probable cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above: a forfeiture money judgment in the

amount of at least $462,178, such amount constituting the proceeds of the violations set forth in this bill of indictment.

A TRUE BILL

ANNE M. TOMPKINS
UNITED STATES ATTORNEY

LAURA LANSFORD
SPECIAL ASSISTANT UNITED STATES ATTORNEY

KEILI H. FERRY
ASSISTANT UNITED STATES ATTORNEY

25